**Marilyn Sue (Farmer) MOUSER, Respondent,**

v.

**ST. JOE MINERALS CORPORATION, Appellant.**

Nos. 14180, 14182.

Missouri Court of Appeals, Southern District, Division One.

May 2, 1986.

Motion for Rehearing or to Transfer Denied May 19, 1986.

Application to Transfer Denied June 17, 1986.

Walter W. Nowotny, Jr., Clayton, for appellant.

Marilyn Sue (Farmer) Mouser, pro se.

## COMMISSION'S ORDERS AFFIRMED

FLANIGAN, Judge.

This proceeding, under the Workers' Compensation Law, involves the interplay of the "lump sum payment," due to a widow in the event of remarriage, § 287.-240(4)(a),[1] and the subrogation rights of an employer, under § 287.150.3, when the dependents of the deceased employee effect a recovery against a third person. The issue is whether, under the facts at bar and the statutes then in existence, the recovery relieves the self-insured employer from making the "lump sum payment" to the widow when she remarried after the settlement was effected.

Respondent Marilyn Sue Farmer, now Marilyn Sue Farmer Mouser, and her two minor children, filed a claim, under the Workers' Compensation Law, against appellant St. Joe Minerals Corporation, a self-insured employer, for death benefits and burial expenses arising out of the death of respondent's then husband Bobby R. Farmer. Additional claimants were decedent's two minor children by a prior marriage.

The following are the significant events:

### March 23, 1982

The employee was fatally injured under compensable circumstances.

### May 10, 1982

The widow and the four children filed the claim for death benefits and burial expenses.

### June 2, 1982

The Commission entered an award in favor of the claimants and awarded $2,000 for burial expenses; "for death benefits" the widow was awarded $134 per week "in accordance with § 287.240," and each of the four minor children was awarded $10 per week, with the payments to begin on March 24, 1982. The award recited: "In accordance with § 287.240 the total amount of compensation under this award shall not exceed $195,000."

### Some unknown date prior to December 2, 1984

A wrongful death action, based on the death of the employee, against a third person, Joy Manufacturing Company, was settled for $750,000. After deduction of an attorney's fee of $300,000, and $6,000 in expenses, $444,000 was distributable to the beneficiaries, including the widow, of the wrongful death claim.

### December 2, 1984

The attorney representing the beneficiaries of the wrongful death action sent a check in the amount of $13,616 to St. Joe "as the amount for repayment to St. Joe as its subrogation interest."

### December 28, 1984

The widow married her present husband.

### January 30, 1985

St. Joe advised the Commission of the wrongful death settlement and the remarriage.

### February 8, 1985

The Commission entered an "Order Terminating Death Award." The order recited that St. Joe had filed an application "to end the death award," together with supporting documents indicating that a third party settlement of $750,000 was effected. The order then reads:

"Death award previously entered in this case be terminated due to the amounts received by the dependents pursuant to a third party settlement in this case. Termination of this award shall not affect the widow's entitlement to a two-year lump sum in the event of remarriage pursuant to *Ikerman v. Koch,* 580 S.W.2d 273 (Mo. banc 1979)."

### February 15, 1985

The Commission entered an order reciting that the widow had advised the Commission by letter and presentment of her

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

marriage certificate that she was married on December 28, 1984, to Jerry Mouser. The order reads, in part:

"The remarriage, as can be seen, predated the [order of February 8, 1985].

Employer shall pay to the widow, Marilyn Sue Farmer Mouser, a lump sum in the amount of $13,936, representing payment of her weekly benefit amount of $134 for a period of two years or 104 weeks. A receipt for compensation paid shall be filed with this Commission. The [order of February 8, 1985] shall otherwise remain in full force."

St. Joe filed separate appeals to this court from the Commission's orders of February 8, 1985 and February 15, 1985, as permitted by § 287.495.

**2.** Section 287.150

"1. Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person....

2. When a third person is liable for the death of an employee and compensation is paid or payable under this chapter, and recovery is had either by judgment or settlement for the wrongful death of the employee, subject to subsection 3, the employer shall receive or have credit for all sums paid or payable under this chapter to any one or all of the dependents of the deceased employee to the extent of the settlement or recovery for the wrongful death, whether or not one or all of the dependents are entitled to share in the proceeds of the settlement or recovery and whether or not one or all of the dependents could have maintained the action or claim for wrongful death.

3. Whenever recovery against the third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorney fee have been paid the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered, or the balance of the recovery may be divided between the employer and the employee or his dependents as they may agree. Any part of the recovery found to be due the employer, the employee or his dependents shall be paid forthwith and any part of the recovery paid to the employee or his dependents under this section shall be treated by them as an advance payment by the employer on account of any future installments of compensation."

St. Joe, the only party to file a brief in this court, asserts that the Commission exceeded its authority in ordering St. Joe to pay $13,936 as a "lump sum payment" under § 287.240 because: (a) the order violates the limit of $195,000 set forth in § 287.240(2) RSMo Supp.1982. (The $195,000 limit was enacted in 1980 and repealed in 1983); (b) the third party settlement of $750,000 "exceeds the maximum death benefit allowed so that death benefits are terminated and the widow is not *thereafter* entitled to the lump sum upon remarriage."

Material portions of statutes, as they existed at the time of the employee's death and which are pertinent to the issues on this appeal, are set forth below.[2]

Section 287.160.2

"Compensation shall be payable on the basis of 66⅔ percent of the average earnings of the employee ... but in no case shall the compensation exceed ninety-five dollars per week."

Section 287.240

"If the injury causes death either with or without disability, the compensation therefor shall be as provided in this section:

(1) In all cases the employer shall pay ... the reasonable expense of the burial of the deceased employee not exceeding two thousand dollars....

(2) The employer shall also pay to the total dependents of the employee a death benefit based on the employee's average weekly earnings during the year immediately preceding the injury that results in the death of the employee, as provided in section 287.250. The amount of compensation for death, which shall be paid in installments in the same manner that compensation is required to be paid under this chapter, shall be computed as follows: provided, that the total amount of such compensation shall not exceed one hundred ninety-five thousand dollars.

(4) The word 'dependent' as used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his or her wages at the time of the injury. The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee, and any death benefit shall be payable to them to the exclusion of other total dependents:

(a) A wife upon a husband with whom she lives or who is legally liable for her support, and a husband upon a wife with whom he lives or who is legally liable for his support; provid-

The two cases which construe the pertinent statutes and control the disposition of this appeal are *Yardley v. Montgomery,* 580 S.W.2d 263 (Mo. banc 1979), and *Ikerman v. Koch,* 580 S.W.2d 273 (Mo. banc 1979). Both involved the remarriage benefit, § 287.240(4)(a), and *Ikerman* involved the effect of a third party recovery upon the remarriage benefit.

In *Yardley* the supreme court held that on the remarriage of a deceased employee's widow, who was entitled to the remarriage benefit, the periodic benefits, to which she would have been entitled if she had not remarried, were to be paid immediately to the dependent children rather than deferred until two years subsequent to the remarriage.

The court held that the remarriage benefit, inserted in § 287.240 in 1974, was not limited by the maximum death benefit compensation of $95 per week set forth in § 287.240.2, RSMo 1975 Supp., and § 287.-160.2, RSMo 1975 Supp. The remarriage benefit constitutes "a separate benefit unrelated to the death benefit installment compensation award." *Yardley,* at 270.

Also at 270 the court said:

"There are, in § 287.240 three compensations provided: (1) burial expense, (2) a lump sum remarriage award and (3) a 'death benefit' or 'compensation payable in installments' not to exceed $95.00 per week. Only the death benefit in subsection 2 is subject to the maximum. The lump sum remarriage payment is not so subject, hence the periodic death benefit to which the widow is entitled had she not remarried which are directed to be divided to the dependent children are also not subject to the maximum limitation. There is no basis in the statute to treat the lump sum payment to the widow as a death benefit subject to the maximum limitation of $95.00 per week in subsection 2. Construing the statute as a whole, the maximum limitation of $95.00 per week is not applicable to burial expense in subsection 1 and the lump sum remarriage payment in subsection 4."

The court held that the remarriage benefit was *not* "an advancement of benefits due over the two-year period [which] must be depleted before the periodic benefit due the widow may be redistributed to the children." *Yardley* at 271.

In *Ikerman* the supreme court held that the widow was entitled to the remarriage benefit, in an amount equal to periodic benefits due for a two-year period, although there had been a third party recovery in excess of the remarriage benefit.

In *Ikerman,* in January 1975, the employee was fatally injured, under compensable circumstances, and was survived by a widow and two children. In May 1975 a wrongful death action against a third party was settled and the widow's net recovery was $19,666.67. In January 1976 a compensation award was entered which gave the employer-insurer a credit of $19,666.67, representing 307.29 weeks of compensation at $64 a week. The widow's share of the weekly compensation was $48 and each child's share was $8. The credit had the effect of postponing compensation payments until December 4, 1980.

On January 31, 1976, the widow remarried. In February 1976 the award was properly modified by terminating the widow's compensation payments which would have commenced December 4, 1980, granting the widow a remarriage benefit of $4,992 (104 weeks, or two years, at $48 per

---

ed, that on the death or remarriage of a widow or widower, the death benefit shall cease unless there be other total dependents entitled to any death benefits under this chapter. In the event of remarriage, a lump sum payment equal in amount to the benefits due for a period of two years shall be paid to the widow or widower. Thereupon the periodic death benefits shall cease unless there are other total dependents entitled to any death benefit under this chapter, in which event the periodic benefits to which such widow or widower would have been entitled had he or she not died or remarried shall be divided among such other total dependents and paid to them during their period of entitlement under this chapter."

. . . . .

(7) All death benefits in this chapter shall be paid in installments in the same manner as provided for disability compensation.

week), and awarding the children $32 each, for a total of $64 weekly compensation, commencing December 4, 1980.

It will be observed that the February 1976 award, approved by the supreme court, granted the widow a remarriage benefit which was unaffected by the third party recovery. The court said the purpose of the remarriage benefit was "to encourage, or at least not discourage, widows from remarrying or delaying remarriage because of her monetary entitlement to benefits as a widow for the rest of her life." The court also said, at p. 279:

"From a practical standpoint, the remarriage benefit was adopted as a legislatively imposed, arbitrary 'settlement' of the future liability of the employer to the widow. In this way, the employer's obligation to the widow could be terminated and by remarrying she would not be losing all of her remaining monetary entitlement."

The court held, at p. 279, that the remarriage benefit is *not* "an advancing of the weekly benefit amount due the widow." The court emphasized "the independent character of the remarriage payment," and the fact, as held in *Yardley*, that the remarriage benefit is not an "installment of compensation."

The court held that § 287.150(2), set forth in footnote 2 and dealing with the employer's credit arising out of a third party recovery, does not entitle an employer to a credit, based on a third party recovery, with respect to payments, such as the remarriage benefit, which are not installments of compensation.

At p. 279 the court said:

"Thus, § 287.150(2) which by its terms is subject to § 287.150(3) does not require payments which are not installments of compensation to be credited against the third party recovery. Therefore, the remarriage payment, not being an installment of compensation, nor representative of future installments which the widow would be entitled to receive cannot be used as an offset against the third party recovery credit nor can the

outstanding credit in the employer's favor, because of the third party recovery, justify the nonpayment to the widow of the lump sum remarriage benefit required by § 287.240(4)(a). This section is an independent and separate section which provides that in the event of remarriage a lump sum payment 'shall be paid to the widow or widower.'

There is *nothing* which precludes such payment in the event of a third party recovery. There is nothing in § 287.240(4)(a) which authorizes credit to be given. The statute does not say, as it could, that when a third party recovery is effected for the wrongful death of the employee and the widow[er] remarries within the credit period, the widow[er] shall not be entitled to a lump sum remarriage benefit.

We hold that under the facts and under the present statutes (1) the respondent Mrs. Ikerman is entitled to be paid a lump sum remarriage payment in an amount equal to the benefits due for a period of two years despite the fact that there was a third party recovery, and (2) the appellants are not entitled to a credit for the lump sum payment although the remarriage occurred during the credit period."

■ The foregoing language makes it clear that a widow's entitlement to a remarriage benefit is not impaired or affected by a third party recovery. A third party recovery does not give the employer a credit with respect to the remarriage benefit. The part of a third party recovery paid to the employee or his dependents, under § 287.150.3 "shall be treated by them as an advance payment by the employer on account of any future installment of compensation." The remarriage benefit is not an "installment of compensation" and is immune from the subrogation rights afforded the employer under § 287.150.

The remarriage of the widow entitles her, under § 287.240(4)(a), to "a lump sum payment equal in amount to the benefits due for a period of two years." In the case at bar the Commission, in the order of

February 15, 1985, properly calculated the remarriage benefit at $13,936.

■ St. Joe asserts that *Ikerman* is distinguishable from the facts here for three reasons. First, St. Joe argues that the proviso in § 287.240(2), ["provided that the total amount of such compensation shall not exceed $195,000"], was not in effect when the facts in *Ikerman* arose. That proviso was enacted in 1980 and was repealed in 1983 but was in effect at the time of the instant death. St. Joe argues that in *Ikerman* there was the possibility that the death benefits would have resumed after the credit for the third party settlement was exhausted. In the case at bar, argues St. Joe, the third party recovery exceeded $195,000 and thus there was no possibility that the death benefits would resume. The fallacy in St. Joe's argument is that the proviso in § 287.240(2) imposed a limit of $195,000 on the "death benefit" and the supreme court held in *Yardley* that the remarriage award is "a separate benefit unrelated to the death benefit installment compensation award." Thus the $195,000 limit had no application to the remarriage benefit.

Second, St. Joe argues that when the widow remarried on December 28, 1984, "there was no longer a legal obligation to pay death benefits" because the third party recovery, in light of the $195,000 limitation, had eliminated death benefits. Again St. Joe makes the mistake of assuming that the remarriage benefit is a death benefit.

■ Third, St. Joe points to the language from *Ikerman* at p. 279, quoted above, where the supreme court said: "(2) The appellants are not entitled to a credit for the lump sum payment although the *remarriage occurred during the credit period*." St. Joe points out that the remarriage in *Ikerman* took place "during the credit period" and the instant remarriage did not take place "during the credit period" because, says St. Joe, "here there is no comparable credit period because the death benefits were terminated."

In *Ikerman* the amount of the third party recovery produced a credit period of 307.29 weeks which ended on December 4, 1980, and the remarriage took place in 1976. Clearly, however, if the widow in *Ikerman* had delayed her remarriage until after December 4, 1980, when death benefit installment payments to her had been resumed, she would have been entitled to the remarriage benefit. Remarriage during the credit period was not a requirement for entitlement to the remarriage benefit. The remarriage benefit was payable whether or not the remarriage occurred during or after the credit period. There is no merit in St. Joe's efforts to distinguish *Ikerman*.

■ Finally, St. Joe argues, "The remarriage payment cannot stand alone. In the context of § 287.240(4)(a) the remarriage payment can only be the result of death benefits ceasing because of the remarriage" and "that is not the case here." This argument is at war with the holding in *Yardley* that the remarriage benefit is "a separate benefit unrelated to the death benefit installment compensation award." Although the *amount* of the remarriage benefit is based upon "the benefits due for a period of two years," remarriage itself is the only event required for entitlement. To hold otherwise would give St. Joe subrogation rights under § 287.150 with respect to the remarriage benefit and the holding in *Ikerman* is that the remarriage benefit is immune therefrom.

The Commission's orders of February 8, 1985 and February 15, 1985 are affirmed.

TITUS, P.J., and GREENE, J., concur.